# NATIONAL SECURITY FIRE & CASUALTY COMPANY
## *v.* Karen BARNES

CA 98-669 984 S.W.2d 80

Court of Appeals of Arkansas
Division III
Opinion delivered January 13, 1999

*Laser, Wilson, Bufford & Watts, P.A.*, by: *Dan F. Bufford* and *Brian A. Brown*, for appellant.

*Everett & Mars*, by: *John C. Everett* and *Jason H. Wales*, for appellee.

MARGARET MEADS, Judge. This case involves a default judgment entered against appellant, National Security Fire & Casualty Company. The jury awarded appellee Karen Barnes $25,000 in compensatory damages and $500,000 in punitive damages. Upon being notified that a default judgment had been entered against it, appellant moved to set the judgment aside or, in the alternative, for a remittitur of damages. The trial court denied the motion to set aside, but reduced the punitive damage award to $250,000. On direct appeal, appellant asserts numerous points of error, two of which merit reversal. On cross-appeal, appellee challenges the reduction of the punitive damage award.

The relevant facts are as follows. In July 1993, appellee applied for automobile insurance through Rebsamen Insurance, Inc., an insurance agency. Rebsamen placed the coverage with appellant. In September 1995, appellee was involved in an accident with an uninsured motorist. She informed Rebsamen of the accident, but was told she had no uninsured motorist coverage. Upon appellee's request, Rebsamen showed her a document purporting to be her signed rejection of such coverage.

In January 1997, appellee filed suit against Rebsamen and appellant, claiming that her signature on the uninsured motorist rejection form was a forgery. The complaint alleged that Rebsamen was the general agent of appellant and that appellant was liable for Rebsamen's misconduct through the doctrine of *respondeat superior*. The complaint was served on both defendants. Rebsamen filed a timely answer denying the allegation of forgery and asserting that appellee had in fact rejected uninsured motorist coverage. Appellant, due to an administrative error, failed to answer the complaint. Trial on the case was set for December 3, 1997.

On the day of trial, Rebsamen appeared ready to defend. Appellant, not having received notice of trial, did not appear. Before the trial could begin, appellee and Rebsamen entered into a settlement agreement, whereby Rebsamen paid appellee $10,000 in exchange for being dismissed from the lawsuit. After this agreement was entered into, a jury was empaneled to determine the amount of damages to be awarded against appellant. Appellee's counsel informed the jury during his opening statement that appellant, by its failure to file an answer, admitted that the forgery was done on purpose, in bad faith, maliciously, and intentionally. The court instructed the jury that appellant had admitted liability in the case and that they need only decide the amount of damages. After a short deliberation, the jury returned with the aforementioned verdict.

Within a few days after the jury's verdict was rendered, appellant was informed that a default judgment had been entered against it. Appellant moved to set the judgment aside arguing, among other things, that it was not in default because Rebsamen's answer inured to its benefit, and that appellee's settlement with Rebsamen released it from liability. After a hearing, the trial court denied the motion to set aside, but reduced the punitive damage award to $250,000. It is from this order that appellant brings its appeal and appellee brings her cross-appeal.

The first issue we address is whether Rebsamen's answer to appellee's complaint inured to appellant's benefit, thus preventing a default. A default judgment is not a favorite of the law and should be avoided where fairly possible. *Allied Chemical*

*Corp. v. Van Buren School Dist. No. 42*, 264 Ark. 810, 575 S.W.2d 445 (1979). If a trial court denies a motion to set aside a default judgment, we must decide on appeal whether the trial court abused its discretion. *Id.*

██ ██ As a general rule, one defendant cannot assert the rights of a codefendant who does not answer. *Firestone Tire & Rubber Co. v. Little*, 269 Ark. 636, 599 S.W.2d 756 (Ark. App. 1980). However, when a defense asserted by an answering defendant goes to the merits of the whole case and answers allegations directed to it and common to nonanswering defendants, the answer of the first defendant inures to the benefit of his codefendants. *Id.*; *Dean Leasing, Inc. v. Van Buren County*, 27 Ark. App. 134, 767 S.W.2d 316 (1989). In this case, Rebsamen's answer denied the allegation of forgery and asserted that appellee had signed the rejection form. That defense went to the merits of the whole case and was common to Rebsamen and appellant. Therefore, Rebsamen's answer inured to appellant's benefit, and appellant was not in default for failure to answer.

██ Appellee concedes it is likely that Rebsamen's answer inured to appellant's benefit. However, she argues, once Rebsamen was dismissed from the case, Rebsamen's answer was no longer operative, and could not work in favor of appellant. Appellee's argument is contrary to our supreme court's holding in *Schueck Steel, Inc. v. McCarthy Bros., Inc.*, 289 Ark. 436-A, 717 S.W.2d 816 (1986)(supp. op. on rehearing). There, the court held that even when an answering defendant is no longer in the case at the time a default judgment is requested, its answer continues to inure to the benefit of the party against whom the default judgment is sought. Appellee attempts to distinguish *Schueck* on the basis that it involved a defendant dismissed by a nonsuit rather than a settlement. However, the opinion makes no such distinction, nor is there a rational basis for such a distinction. Once an answer inures to a defendant's benefit, it would be illogical to retract that benefit upon dismissal of the answering defendant. If such a retraction were allowed, plaintiffs could subvert the rule by nonsuiting or settling with an answering defendant.

We turn now to the issue of whether appellee's settlement with Rebsamen precluded further litigation against appellant. Where the liability of a master for the tort of a servant is based solely on the doctrine of *respondeat superior*, a valid release of the servant operates to release the master. *Rhodes v. Progressive Cas. Ins. Co.*, 36 Ark. App. 185, 820 S.W.2d 293 (1991). However, such a release does not preclude further action against a master for the master's own conduct. *Id.* The question in this case is whether appellee sought recovery against appellant for appellant's own conduct or merely as Rebsamen's principal. Our review of appellee's complaint and the modicum of evidence presented at the default-judgment hearing convinces us that recovery was sought against appellant based solely upon its relationship to its agent, Rebsamen Insurance, Inc. The complaint contains no allegations that appellant participated in the alleged forgery. Further, appellee asserts in her complaint that, under the doctrine of *respondeat superior*, appellant was liable for the acts of its agent, Rebsamen. The complaint also refers to Rebsamen as acting in its capacity as appellant's agent. Finally, the complaint alleges that the rejection form was forged by "the defendants acting through their agents" and by "agents of the defendants." Nothing in the complaint indicates any basis for appellant's liability other than *respondeat superior*.

Likewise, during the trial on damages, no evidence was adduced regarding any independent tortious conduct of appellant. It is noteworthy that appellee's counsel stated to the judge that appellant was responsible based upon the theory of "*respondeat superior* if at all, because of what Rebsamen did."

 Appellee argues that she does in fact possess evidence of appellant's independent misconduct. In her response to appellant's motion to set aside the judgment, she argued for the first time that certain documentary evidence showed appellant's participation in the forgery. She claimed that a copy of the rejection form she received from appellant prior to the lawsuit being filed showed an "X" beside the rejection option. However, a copy of the form she received from Rebsamen during the discovery process did not contain an "X." Appellee argues that appellant must have been guilty of marking the box rejecting uninsured motorist

coverage. Despite such allegations, appellee did not indicate in any way prior to the entry of the default judgment or prior to the execution of the settlement agreement that she sought recovery against appellant on any theory other than *respondeat superior*. Therefore, under the rule announced in *Rhodes v. Progressive Casualty Ins. Co., supra*, appellee's settlement agreement with Rebsamen inured to the benefit of appellant.

Because our resolution of these two issues is dispositive of appellant's appeal, we do not address appellant's remaining arguments. Further, our disposition of the direct appeal makes it unnecessary for us to reach appellee's cross-appeal.

Reversed and dismissed.

ROBBINS, C. J., and BIRD, J., agree.